**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

JAN 2 0 2005

Judge Robert W. Gettleman
United States District Court

------------------------------------------------------------X

MAURICE LEVIE, individually and on :
behalf of all others similarly situated, :
:
Plaintiff, : Civil Action No. 04 C 7643
:
: *Judge Gettleman*
-against- :
:
SEARS ROEBUCK & CO. and ALAN J. LACY, :
:
Defendants. :
:
------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF MOTION TO APPOINT SELLERS' GROUP AS LEAD PLAINTIFFS AND FOR APPROVAL OF MOVANTS' SELECTION OF COUNSEL PURSUANT TO SECTION 21D(A)(3)(b) OF THE SECURITIES EXCHANGE ACT OF 1934

### PRELIMINARY STATEMENT

Pursuant to the Private Securities Litigation Reform Act, 15USC78 V04(a)(3)(B)(i), Proposed Lead Plaintiffs (Maurice Levie and H. Robert Monsky) seek appointment as lead plaintiffs of a class of sellers of the common stock of Sears Roebuck & Co. ("Sears") from November 8, 2004 through the close of trading on November 18, 2004 and a further order approving lead plaintiffs' choice of counsel, Squitieri & Fearon, LLP and the Law Offices of Charles J. Piven as Lead Counsel and The Wexler Firm LLP as liaison counsel. To date, this is the only class action filed against defendants alleging claims on behalf of class members. As required under the PSLRA, a Notice of Pendancy was published on November 24, 2004 advising Class Members of the lawsuit and affording them the opportunity to seek to be appointed Lead Plaintiff.

As a result of publication of notice, an additional proposed Lead Plaintiff has come forward and retained plaintiff's counsel herein as its counsel. The Proposed Lead Plaintiffs all have significant financial stakes in the litigation. Both have taken the initiative to investigate the claims asserted in this action; to communicate with plaintiff's counsel and to ultimately authorize plaintiff's counsel to apply to the Court for appointment as Lead Plaintiffs. Proposed Lead Plaintiffs now respectfully submit this memorandum of law in support of their motion for an order: (1) appointing themselves as Lead Plaintiffs; (2) and approving their selection of counsel.

## STATEMENT OF FACTS[1]

The complaint's theory of action is that defendants violated the Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder (15 USC 78j(b); and 20(a)) 15 USC 78t(a) by concealing until the last possible moment, Sears' deal to be acquired by Kmart Holding Corporation ("Kmart"). In addition, the defendants made materially false and misleading statements about Sears's business strategy and plans, which misled investors. Had plaintiff and members of the class received truthful, accurate and complete information regarding Sears' plans to be acquired by Kmart, plaintiff would not have sold his stock. Accordingly, plaintiff would have been able to obtain a much higher price for their stock than they did.

The complaint alleges that in a series of press releases defendants represented that Sears would continue to independently pursue its business plan and operate its stores. On September 29, 2004, Sears issued a press release announcing that it had closed on the acquisition of ownership or leasehold interests in 50 stores from Kmart Holding Corporation for $575.9 million. Complaint ¶13.

---

[1] The source for the Statement of Facts is the complaint filed in this action references to which appear as "Complaint ¶___".

In the press release, defendant Lacy is quoted as follows:

> "The completion of this transaction moves Sears another step closer to its strategic goal of growing our store base and the Sears brand off-mall. We look forward to an increased presence in these key markets and serving new and existing customers."

Complaint ¶14. On October 21, 2004, Sears issued a press release announcing its third quarter 2004 results, which reported a net loss of $61 million or $.29 per share. Defendant Lacy said, in the press release, that "softer retail demand" contributed to the "disappointing third quarter". Looking ahead, Lacy stated:

> "Based on our sales and margin performance over the past two quarters, coupled with a more cautious holiday outlook, we have adopted a more conservative outlook for the fourth quarter. While we remain optimistic about a favorable holiday shopping season, we believe it appropriate to lower our fourth quarter sales and margin assumptions."

Complaint ¶18. On the release of this news, Sears' stock fell approximately 10% from $36.92 at the close on October 20, 2004 to $33.74 per share at the close on October 21, 2004. Complaint ¶19.

During the Class Period, plaintiff sold his Sears stock as set forth in the Certificate annexed hereto. See Declaration of Edward A. Wallace, Exhibits A and B, Certifications of Maurice Levie and H. Robert Monsky respectively.

On November 18, 2004 Sears and Kmart announced that Kmart would acquire Sears with Kmart stockholders receiving 55% of the combined companies' equity in Sears Holding Corp. Complaint ¶18. Defendants were in discussions to be acquired by Kmart as early as November 9, 2004, but failed to disclose same. Complaint ¶19.

During the Class Period, defendants' material omissions and misrepresentations had the effect of keeping Sears' stock price artificially low and actually depressing it. Complaint ¶20.

3

This conduct resulted in plaintiff and other members of the Class selling Sears securities at prices significantly below the actual value of those securities. Plaintiff and other members of the Class either would not have sold Sears securities or would have sold such securities only at the much higher prices which would have prevailed during the Class Period had defendants disclosed the material information about the Company's plan to merge with Kmart.

When the market learned about the Company's plan to merge with Kmart on November 17, 2004, the price of Sears common stock increased almost 25% from its price at the start of the class period and the volume of shares traded on the date the merger was revealed was nearly 10 times the average daily volume. (Complaint ¶22)

Accordingly, the material omissions, misrepresentations, acts, practices and schemes alleged herein were the proximate causes of the damages and loss sustained by Class members in connection with their sales of the Company's securities during the Class Period. Complaint ¶23.

## ARGUMENT

## I. THE APPLICATION OF THE PROPOSED LEAD PLAINTIFFS SHOULD BE GRANTED BY THIS COURT

### A. The Proposed Lead Plaintiffs Have Satisfied The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions. See 15 U.S.C. §78u-4(a)(3) and Taubenfeld v. Career Education Corp. 2004 U.S. Dist. LEXIS 4363 (March 19, 2004, N.D. Ill.) (J. Lefkow). According to the PSLRA, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice informing Class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff filed the first federal securities action against Sears and published the required Notice, which was disseminated to investors through news services and

4

business wires.  See Wallace Declaration, Exhibit C.

According to the PSLRA, the Court shall consider any motion made by a Class member and shall appoint as Lead Plaintiff the member of the Class that the Court determines to be most capable of adequately representing the interests of Class members within 90 days after publication of the initial notice of pendency.  15 U.S.C. §78u-4(a)(3)(B)(i). In determining who is the "most adequate Plaintiff," the Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. §78u-4(a)(3)(B)(iii),  Craig v. Sears Roebuck & Co. 253 F. Supp.2d 1046, 1048 (N.D. Ill. 2003); Taubenfeld, supra at *3; Mayo v. Apropos Technology Inc. 2002 U.S.Dist. LEXIS 4, 7, (February 7, 2002, N.D. Ill.,) (J. Coar); Singer v. Nicor, Inc. 2002 U.S. Dist. LEXIS 19884 (N.D. Ill, October 17, 2002) (J. Lingberg).  Proposed Lead Plaintiffs have timely filed this motion to be appointed Lead Plaintiffs;  they have submitted certifications attesting to their transactions in Sears's securities during the Class Period and they have selected and retained competent and experienced counsel to represent them and the Class.

### 1. The Proposed Lead Plaintiffs Have Made A Timely A Motion For Appointment As Lead Plaintiffs

Class members have until January 23, 2005 to move to be appointed Proposed Lead Plaintiff(s) pursuant to 15 U.S.C. §78u-4(a)(3)(A) and (B).  In accordance with the PSLRA and a

prior order of this Court, Proposed Lead Plaintiffs have timely moved this Court to be appointed Lead Plaintiffs on behalf of all Class members. See e.g. Singer v. Nicor, supra, at *6 (motions made within 60 days are timely).

In addition, all Proposed Lead Plaintiffs have signed and submitted certifications attesting their transactions in Sears's securities during the Class Period and have indicated their willingness to serve as a representative parties on behalf of the Class. See Wallace Decl. at Exhibits A, and B.

### 2. The Proposed Lead Plaintiff Are The Most Presumptively Adequate

The PSLRA instructs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4 (a) (3) (B) (i). The statute establishes a rebuttable presumption that the "most adequate plantiff" is "the person or group of persons" that has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a) (3) (B) (iii) (I). This presumption may be rebutted by proof that the plaintiff with the largest financial interest "will not fairly and adequately protect the interests of the class....or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4 (a) (3) (B) (iii) (II).

Although the PSLRA is silent as to the manner in which the "largest financial interest" should be calculated, courts have noted that four factors are relevant to this inquiry:

> (1) the number of shares; (2) the number of net shares purchased; (3) the total net funds expended by the Plaintiff during the class period; and (4) the approximate losses suffered by the Plaintiff.

See Mayo v. Apropos supra at [*9] citing Lax v. First. Merchants, supra at [*17].

During the proposed Class Period, The Proposed Lead Plaintiffs suffered losses of $1,368.00 and $48,462.00 respectively as a result of the defendants' materially false and misleading statements and omissions.  See Wallace Decl. at Exhibits A and B.  To the best of counsel's knowledge, the losses of the Proposed Lead Plaintiffs are the largest.

Thus, Movants are the presumptively most adequate plaintiffs under the PSLRA.

### 3.    The Proposed Lead Plaintiffs Otherwise Satisfy Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a Class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to Class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the Class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Courts in this district the Court should limit its focus to the typicality and adequacy requirements.  See Taubenfeld v. Career Education Corp. supra at *6-7 citing Johnson v. Tellubs, Inc. 214 F.R.D. 225, 228 (N.D. Ill. 2002); Lax v. First Merchants Acceptance Corp. 1997 U.S. Dist. LEXIS 11866 at *6 (N.D. Ill. Aug. 11, 1997).  As detailed below, The Proposed Lead Plaintiffs satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

### a. The Proposed Lead Plaintiffs Fulfill The Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the Class. Typicality exists if a claim "arises from the same event or practice or course of conduct that gives rise to the claims of the class members and the claims are based on the same legal theory". <u>Mayo v. Apropos,</u> <u>supra</u> at *12. <u>Taubenfeld</u> <u>supra</u> at *7 citing <u>Rosario v. Livaditis</u> 963 F 2d 1013, 1018 7th Cir. 1992. However, the claims of the Class representative need not be identical to the claims of the Class to satisfy typicality. Instead, the Courts have recognized that even "same factual distinctions" will generally not preclude a finding of typicality where there is a strong similarity of legal theories. <u>Johnson v. Tellabs, Inc.</u> <u>supra</u> at 228.

The Proposed Lead Plaintiffs who seek to represent a Class of sellers of Sears' securities, all have identical, non-competing and non-conflicting interests. As a result, the Proposed Lead Plaintiffs satisfy the typicality requirement because, just like all other Class members, they:  (1) sold Sears securities during the Class Period; (2) at prices allegedly artificially inflated due to the defendants' materially false and misleading omissions and/or statements; and (3) suffered damages. <u>Johnson v. Tellubs Inc.</u> <u>supra</u> at 228 citing <u>Mayo</u> at *4.

### b. The Proposed Lead Plaintiffs Fulfill The Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." In this Circuit, to fulfill the adequacy standard required under the PSLRA, "the proposed lead plaintiff must demonstrate (1) that his claims are not antagonistic or in conflict with the Class; (2) they have a sufficient financial interest in the outcome to ensure vigorous advocacy and (3) are represented by competent experienced counsel who are able to

vigorously prosecute the action. <u>Johnson v. Tellabs Inc.</u> at 229; <u>Lax v. First Merchants</u> at *22; <u>Taubenfeld v. Career Education</u> supra at *7.

Here, the Proposed Lead Plaintiffs' interests are clearly aligned with the members of the putative Class and there is no evidence of any antagonism between their respective interests. As detailed above, movant's share common questions of law and fact with the members of the Class and the claims are typical of the claims of other Class. Movants have already taken significant steps demonstrating that they have and will protect the interests of the Class. Movants have executed certifications detailing their Class Period transactions and expressing their understanding of the duties and responsibilities of the lead plaintiff and their willingness to serve as such; they have moved this Court to be appointed as Lead Plaintiff in this action; and have retained competent and experienced counsel whose collective experience in securities class actions demonstrates that they will be able to conduct this complex litigation in a professional manner. See Wallace Declaration Exhibits D, E and F, resumes of Squitieri & Fearon, LLP, the Law Offices of Charles J. Piven and The Wexler Firm LLP, respectively.

Clearly, Movants satisfy all prongs of the Exchange Act's prerequisites for appointment as Lead Plaintiffs in this action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

### B.  THE COURT SHOULD APPROVE THE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL

The PSLRA provides that the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class." [*18] 15 U.S.C. § 78u-4 (a) (3) (B) (v). Nevertheless, "the decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the district court."

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. In that regard, the Proposed Lead

Plaintiffs have selected and retained Squitieri & Fearon, LLP and the Law Offices of Charles Piven to serve as Co-Lead Counsel for the Class and The Wexler Firm LLP will serve as Liaison Counsel. These firms have extensive experience in prosecuting complex securities actions and are well qualified to represent the Class. See Wallace Decl. at Exhibit D and E (Squitieri & Fearon, LLP resume and Law Offices of Charles Piven resume) and at Exhibit F (The Wexler Firm LLP resume).

## CONCLUSION

Because there is nothing to suggest that Plaintiff or its counsel will not fairly and adequately represent the Class, or that the Proposed Lead Plaintiff is subject to unique defenses - - which is the only evidence that can rebut the presumption of adequacy under the Act -- this Court should appoint Plaintiff as Lead Plaintiff and approve its selection of counsel.

For the foregoing reasons, the Proposed Lead Plaintiff respectfully requests that the Court: (a) appoint Movants as Lead Plaintiffs; (b) and approve their selection of Squitieri & Fearon, LLP and the Law Offices of Charles Piven as Co-Lead Counsel for the Class and The Wexler Firm LLP as Liaison Counsel.

Dated: January 20, 2005

MAURICE LEVIE, individually and on behalf of all others similarly situated,

By:_____
Kenneth A. Wexler
Edward A. Wallace
THE WEXLER FIRM LLP
One North LaSalle Street,Suite 2000
Chicago, IL 60602
(312) 346-2222

SQUITIERI & FEARON, LLP
Lee Squitieri
32 East 57th Street
12th Floor
New York, New York 10022
Tel: (212) 421-6492

LAW OFFICES OF CHARLES J. PIVEN
Charles J. Piven
The World Trade Center
401 East Pratt Street
Suite 2525
Baltimore, Maryland 21202
(410) 332-0030

Attorneys for Plaintiff

CASE NO. _04cv 7643_

ATTACHMENT NO._____

TAB DESCRIPTION_____

EXHIBIT _____1_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

-----------------------------------------------------------------X

MAURICE LEVIE, individually and on : 
behalf of all others similarly situated, :
  :
  :
                  Plaintiff, : Civil Action No. 04 C 7643
  :
    -against- :
  :
SEARS ROEBUCK & CO. and ALAN J. LACY, :
  :
               Defendants. :
  :

-----------------------------------------------------------------X

**DECLARATION OF EDWARD WALLACE IN SUPPORT OF MOTION
TO APPOINT  PROPOSED LEAD PLAINTIFFS  AS LEAD PLAINTIFFS
AND FOR APPROVAL OF COUNSEL PURSUANT
TO SECTION 21D(A)(3)(B) OF THE SECURITIES EXCHANGE ACT OF 1934**

I, Edward Wallace, declare under penalty of perjury, this 20th day of January 2005, as

follows:

1. I am a member of The Wexler Firm LLP, counsel for movants in this action.  I submit this

Declaration in support of the motion by the Proposed Lead Plaintiffs for the appointment of

Lead Plaintiffs and for approval of Lead Plaintiffs' selection of counsel.

2. Attached hereto as Exhibit A and B are true copies and correct copy of the signed

certifications of class members the Proposed Lead Plaintiffs pursuant to the requirements of

the Private Securities Litigation Reform Act of 1995 ("PSLRA").  See 15 U.S.C. § 78u-

4(a)(2).

3. Attached hereto as Exhibit C is a true and correct copy of the notice to class members

concerning the first-filed securities class action that was brought against Sears Roebuck &

Co. in this case advising the public of the pendency of a class action filed on behalf of

investors who sold Sears securities.

4. Attached hereto as Exhibit D is a true and correct copy of the firm biography for Squitieri & Fearon, LLP, the law firm which Proposed Lead Plaintiffs seek to appoint as Co-Lead Counsel.

5. Attached hereto as Exhibit E is a true and correct copy of the firm biography for The Law Offices of Charles J. Piven, the law firm which Proposed Lead Plaintiffs seek to appoint as co-lead counsel.

6. Attached hereto as Exhibit F is a true and current copy of the firm biography for The Wexler Firm LLP which proposed lead Plaintiffs seek to appoint as Liaison Counsel.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Date:   January 20, 2005

_____
EDWARD WALLACE

2

CASE NO. 04 cv 7643

ATTACHMENT NO._____

TAB DESCRIPTION_____

EXHIBIT _____ A _____

## PLAINTIFF'S CERTIFICATION

Maurice Levie ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.    Plaintiff's transactions in Sears Roebuck & Co. securities during the Class Period are as follows:

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 200 | (S) | $44.57 | 11/08/04 |
|  |  |  |  |
|  |  |  |  |

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court. Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2 2 day of November 2004.

_____
Maurice Levie

CASE NO. _O4 cv 7643_

ATTACHMENT NO._____

TAB DESCRIPTION_____

EXHIBIT ____B_____

## PLAINTIFF'S SWORN CERTIFICATION

I, H. Robert monsky, certify that:

1.  I have reviewed the complaint and authorized its filing.

2.  I did not purchase or sell the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in the security that is the subject of this litigation during the class period set forth in the complaint are as follow:

| Date | Purchase/Sale | # of Shares | Price Per Share |
|------|---------------|-------------|-----------------|

See transactions on the attached Schedule.

5.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Dated:

Name: _Robert Monsky_

Address: 300 B wharfside way
Jacksonville, FL. 32207

HRmonsky @ First-Florida-Capital.com
904-396-0348 (O)
904-993-8926 (C)

**Trade Detail**

| Account Type | Trade Date | Settle Date | Exec Time | Trade Number | CUSIP/Symbol | ISIN | Description | Buy/Sell | Qty | Price | Principal Amt | Comm |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Short | 11/08/2004 | 11/12/2004 | 102638 | 1A1P0 | S | | SEARS ROEBUCK | S | -5,000.000 | 44.70000 | 223,500.00 | 21. |
| Short | 11/08/2004 | 11/12/2004 | 110851 | NBSDC | S | | SEARS ROEBUCK | B | 5,000.000 | 43.91600 | -219,580.00 | 21. |
| Short | 11/08/2004 | 11/12/2004 | 122820 | 1A2Q0 | S | | SEARS ROEBUCK | S | -5,000.000 | 43.84000 | 219,200.00 | 21. |
| Short | 11/08/2004 | 11/12/2004 | 152627 | 1A49F | S | | SEARS ROEBUCK | B | 5,000.000 | 43.62000 | -218,100.00 | 21. |
| Short | 11/09/2004 | 11/15/2004 | 082707 | NB2D9 | S | | SEARS ROEBUCK | S | -1,000.000 | 45.01000 | 45,010.00 | 6. |
| Short | 11/09/2004 | 11/15/2004 | 082753 | NB1T9 | S | | SEARS ROEBUCK | S | -4,000.000 | 44.77875 | 179,115.00 | 18. |
| Short | 11/09/2004 | 11/15/2004 | 110445 | 1A34C | S | | SEARS ROEBUCK | B | 200.000 | 43.75500 | -8,751.00 | 1. |
| Short | 11/09/2004 | 11/15/2004 | 133821 | NBD8N | S | | SEARS ROEBUCK | B | 4,800.000 | 44.99583 | -215,980.00 | 20. |
| General Margin | 11/09/2004 | 11/15/2004 | 140744 | 1A2PA | S | | SEARS ROEBUCK | B | 100.000 | 44.89000 | -4,489.00 | 0. |
| General Margin | 11/09/2004 | 11/15/2004 | 144906 | 1A3Y0 | S | | SEARS ROEBUCK | S | -100.000 | 45.10000 | 4,510.00 | 0. |
| Short | 11/10/2004 | 11/16/2004 | 095003 | 1A3BP | S | | SEARS ROEBUCK | S | -5,000.000 | 44.30000 | 221,500.00 | 21. |
| Short | 11/10/2004 | 11/16/2004 | 160047 | 1A5J1 | S | | SEARS ROEBUCK | B | 5,000.000 | 43.46000 | -217,300.00 | 21. |
| Short | 11/11/2004 | 11/16/2004 | 084137 | NAXQK | S | | SEARS ROEBUCK | S | -2,500.000 | 43.50000 | 108,750.00 | 13. |
| Short | 11/11/2004 | 11/16/2004 | 094309 | 1A0ZN | S | | SEARS ROEBUCK | S | -2,500.000 | 43.70000 | 109,250.00 | 13. |
| Short | 11/11/2004 | 11/16/2004 | 095414 | 1A2JE | S | | SEARS ROEBUCK | S | -2,100.000 | 43.97000 | 92,337.00 | 12. |
| Short | 11/11/2004 | 11/16/2004 | 095617 | 1A2FM | S | | SEARS ROEBUCK | S | -2,100.000 | 43.88000 | 92,148.00 | 12. |
| Short | 11/11/2004 | 11/16/2004 | 100434 | 1A157 | S | | SEARS ROEBUCK | S | -800.000 | 43.94000 | 35,152.00 | 4. |
| Short | 11/11/2004 | 11/16/2004 | 155743 | 1A3PW | S | | SEARS ROEBUCK | B | 1,000.000 | 45.57000 | -45,570.00 | 6. |
| Short | 11/12/2004 | 11/17/2004 | 094931 | NBCOH | S | | SEARS ROEBUCK | B | 700.000 | 46.09714 | -32,268.00 | 4. |
| Short | 11/12/2004 | 11/17/2004 | 103923 | 1A3B4 | S | | SEARS ROEBUCK | S | -2,400.000 | 45.50000 | 109,200.00 | 13. |
| Short | 11/12/2004 | 11/17/2004 | 155913 | 1A5HL | S | | SEARS ROEBUCK | B | 2,000.000 | 45.92000 | -91,840.00 | 12. |
| Short | 11/15/2004 | 11/18/2004 | 175201 | NBECE | S | | SEARS ROEBUCK | B | 500.000 | 46.49000 | -23,245.00 | 3. |
| Short | 11/16/2004 | 11/19/2004 | 093503 | 1A13R | S | | SEARS ROEBUCK | S | -1,800.000 | 45.70000 | 82,260.00 | 10. |
| Short | 11/16/2004 | 11/19/2004 | 152037 | 1A3IJ | S | | SEARS ROEBUCK | B | 1,800.000 | 45.49000 | -81,882.00 | 10. |

Page: 1

Legend: B - Buy | S - Sell | BTO - Buy To Open | BTC - Buy To Close | C - Cancel Buy | T - Cancel Sell | STO - Sell To Open | STC - S

CASE NO. _D4cv 7643_

ATTACHMENT NO._____

TAB DESCRIPTION_____

EXHIBIT _____C_____



# Class Action Newsline

PRIMEZONE MEDIA NETWORK

## Squitieri & Fearon, LLP Announces Securities Fraud Suit Against Sears Roebuck & Co.

**Request Class Action Info.**

- NYSE:S

*To request information from the law firm that issued this news release, please click on a company ticker symbol listed above.*

NEW YORK, Nov. 24, 2004 (PRIMEZONE) -- The following statement was issued today by Squitieri & Fearon, LLP:

A class action has been filed in the United States District Court for the Northern District of Illinois against Sears Roebuck & Co.

If you wish to discuss your rights, please contact Lee Squitieri of Squitieri & Fearon, LLP at (212) 421-6492 or by e-mail at lee@sfclasslaw.com.

The lawsuit charges that defendants violated the federal securities laws by issuing a series of materially false and misleading statements to the market throughout the Class Period about the Company and by failing to disclose material information about the Company's plan to merge with Kmart and that when the market learned the truth, the price of Sears securities increased substantially.

The suit is on behalf of persons who sold shares of Sears securities ("Sears" or the "Company") (NYSE:S) during the period from November 8, 2004 through November 16, 2004 (the "Class Period").

Plaintiff seeks to recover damages on behalf of himself and all sellers of Sears securities during the Class Period. Excluded from the Class are the defendants and members of their immediate families, any entity in which a defendant has a controlling interest and the heirs of any such excluded party.

If you are a member of the Class described above, you may, no later than January 23, 2005, move the Court to serve as lead plaintiff of the Class, if you so choose.

If you wish to discuss this action or have any questions concerning this notice or your rights or interests, please contact:

```
CONTACT:   Squitieri & Fearon, LLP
           Lee Squitieri, Esq.
           32 East 57th Street
           12th Floor
           New York, NY 10022
           (212) 421-6492
           lee@sfclasslaw.com
```

PrimeZone | Class Action Newsline | Contact Us

CASE NO.  04 cv 7643

ATTACHMENT NO._____

TAB DESCRIPTION_____

EXHIBIT  ____D_____

**SQUITIERI & FEARON, LLP**
**Attorneys at Law**
**32 East 57th Street**
**12th Floor**
**New York, New York 10022**
**Tel: 212-421-6492**
**Fax: 212-421-6553**

Squitieri & Fearon, LLP represents stockholders, consumers and pension plan participants in complex class action cases in state and federal courts throughout the United States. The name partners of Squitieri & Fearon, LLP formed the firm in 2001 and had been partners in the firm formerly known as Abbey, Gardy & Squitieri, LLP. Messrs. Squitieri and Fearon collectively have over 25 years of class action experience.

The partners at Squitieri & Fearon, LLP have been in the forefront of ERISA litigation since their involvement in a groundbreaking ERISA employee benefit case involving one of America's largest Pharmacy Benefit Managers. Recently, as lead counsel in an ERISA breach of fiduciary case against Textron, the firm was successful in convincing the First Circuit Court of Appeals to reverse the District Court and reinstate all of the claims against Textron and Textron related defendants.

The firm is lead counsel or a member of an executive committee of counsel in several prominent class actions, including:

ERISA Class Actions:

- LaLonde v. Textron, Inc., et al., C.A. No. 02-334-ML (Smith, J.) (U.S.D.C./D.R.I.)

- Smith v. Aquila, Inc., C.A. No. 04-00970 (U.S.D.C./W.D. Mo.)

Shareholder Derivative Actions:

- In re Bristol Myers Squibb Derivative Litigation, C.A. No. 02-CV-8571 (U.S.D.C./S.D.N.Y.)

- In re Computer Associates International Inc. Derivative Action, C.A. No. 04-CV-2697 (U.S.D.C./E.D.N.Y.)

Securities Purchasers Class Actions:

- Collier v. Aksys, Ltd., et al., 04-CV-1232 (MRK) (U.S.D.C./D. Conn.)

- Laufer v. Lucent Technologies, Inc., 01-CV-5229 (Pisano, J.) (U.S.D.C./D.N.J.)

Messrs. Squitieri and Fearon have received commendations from many courts before whom they have appeared, for example:

- In re Waste Management, Inc. Securities Litigation, C.A. No. 97-C-7709 (N.D. Ill. 1999) ($220 million settlement)

The Court favorably commented on the lawyers who actually litigated the case, including Lee Squitieri:

> "…[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases … in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here … I would say this has been the best representation that I have seen."

Recently, in Laufer v. Lucent Technologies, Inc., 01-CV-5229 (D.N.J.), Judge Joel A. Pisano noted that Squitieri & Fearon, LLP was "highly experienced in handling complex, sophisticated securities litigation."

Messrs. Squitieri and Fearon have been the lead counsel in many successful class actions. Examples of some of the notable results obtained by Messrs. Squitieri and Fearon (as members of Abbey Gardy & Squitieri, LLP) are:

- In re Seagate Technology, Inc. Shareholders Litigation, C.A. No. 17932-NC (Del. Ch. Ct. 2000) (approximately $200 million in incremental benefits for shareholders)

- In re Westinghouse Securities Litigation, CA 91-354 (W.D. Pa. 1999) ($67 million recovery)

- In re National Health Laboratories Securities Litigation, CV-92-1949-RBB (S.D.Cal.1995) ($64 million recovery)

- In re National Medical Enterprises Securities Litigation, CV-91-5452-TJH (C.D. Cal. 1994) ($60.7 million recovery)

- In re Coram Healthcare Corp. Securities Litigation, Master File No. 95-N-2074 (D. Colo. 1997) ($47 million recovery)

- *In re Leslie Fay Securities Litigation*, Master File No. 92 CV 8036 (S.D.N.Y.) ($35 million recovery)

- *Demint v. Nationsbank of Florida, et al.*, 94-995-CIV-T-23B (U.S.D.C. Middle District of Florida, Tampa Division 1996) (partial settlement of certain claims, remainder of claims settled for $30 million)

- *In re Sun Healthcare Group, Inc. Litigation*, Master File No. 95-7005 JC/WWD (D.N.M.) ($24 million recovery)

- *In re Caterpillar, Inc. Securities Litigation*, Civil Actions Nos. 90-1238, 90-1242 (C.D. Ill. March 30, 1992) ($23 million recovery).

In addition, the firm has recovered millions of dollars on behalf of individuals who were injured by dangerous products including defective pharmaceuticals and contaminated prosthetic devices.

The members of the firm are:

## Partners:

LEE SQUITIERI received a B.A. degree from Rutgers University in 1979, cum laude. He received his law degree from New York Law School in 1983 and was admitted to practice law in the State of New Jersey in 1983 and in the State of New York in 1984. Mr. Squitieri is admitted to the United States District Court for the Southern and Eastern Districts of New York, the Second Circuit, First Circuit, Fifth Circuit, Third Circuit and Seventh Circuit Courts of Appeal, and the District of New Jersey.

STEPHEN J. FEARON, JR. graduated from Boston University in 1986 and received his law degree from New York Law School in 1990. Mr. Fearon is admitted to the New York State Bar and to the United States District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Michigan, the District of Arizona as well as the Second and Sixth Circuit Courts of Appeals.

## Associates:

DANIEL R. LAPINSKI graduated from Rutgers University in 1990. He received his law degree from Seton Hall School of Law in 1999 and was admitted to practice law in the State of New Jersey in 2000 and in the State of New York in 2001. Mr. Lapinski is admitted to the District Court of New Jersey and the Southern and Eastern District Courts of New York.

MARIA J. CICCIA graduated from Pace University in 1995. She received her law degree from New York Law School in 2002 and was admitted to practice law in the States of New York in May 2002 and Connecticut in June 2002. She is admitted to the Southern and Eastern District Courts of New York.

CASE NO. 04c7643

ATTACHMENT NO._____

TAB DESCRIPTION_____

EXHIBIT ____E_____

## FIRM RESUME

## LAW OFFICES OF CHARLES J. PIVEN, P.A.

This firm operated as a sole proprietorship under the name Law Offices Of Charles J. Piven from May of 1990 through January of 1997. Effective February 1, 1997 the firm was incorporated and renamed Law Offices Of Charles J. Piven, P.A.

**Charles J. Piven** graduated from the University of Miami Law School and was admitted to both the Florida (though currently inactive) and Maryland bars in 1978. Since then, Mr. Piven has been involved in commercial litigation, medical and legal malpractice litigation, securities arbitrations and other complex business, tort and tax litigation (before state, federal and the United States Tax courts). Mr. Piven has participated in representing clients in consumer and securities class action cases and derivative cases since the mid-1980's, having represented clients in over 500 of such cases and having obtained, with co-counsel, recoveries valued in excess of $2 billion.

**Marshall N. Perkins** graduated *magna cum laude* from the University of Baltimore School of Law in 1997, where he was a staff editor for the *University of Baltimore Law Forum.* After receiving his law degree in May, 1997, Mr. Perkins served as law clerk to the Honorable Irma S. Raker of the Court of Appeals of Maryland. Mr. Perkins has practiced in the areas of consumer class action, professional negligence, securities litigation and other complex tort litigation. Mr. Perkins is a member of the Maryland bar, the bar of the United States District Court for the District of Maryland, and the United States Court of Appeals for the Fourth Circuit.

CASE NO. _04cv 7643_

ATTACHMENT NO._____

TAB DESCRIPTION_____

EXHIBIT _____F_____

# T H E │ W E X L E R │ F I R M LLP

Founded in January 2000, The Wexler Firm LLP, based in Chicago, specializes in complex civil litigation. The firm's practice and breadth of experience embodies diverse consumer and commercial litigation matters, including civil rights litigation, securities and commodities class action litigation, antitrust and consumer class action litigation, defamation, and professional malpractice. The focus of the firm's practice is on representing plaintiff individuals and organizations in complex class action matters. In addition to the firm's work in class action representation, The Wexler Firm LLP also represents individuals, businesses and governmental entities in accountant and lawyer malpractice and complex business disputes.

The firm currently serves as counsel in various leadership positions in several federal and multistate cases involving a number of U.S. drug manufacturers accused of restraining trade and engaging in monopolistic activity for the purpose of preventing certain generic drugs from getting to market or preventing brand name competitors' access to consumers. Similarly, the firm is lead counsel in a federal case against approximately twenty pharmaceutical companies accused of implementing a fraudulent scheme to artificially elevate the prices charged for certain drugs covered under Medicare Part B at the expense of consumers and third party payors.

In addition to the cases described above, The Wexler Firm LLP is currently prosecuting various derivative actions and securities class actions in state and federal courts around the country. Consumer fraud class actions in which the firm is actively engaged in various leadership capacities include several class actions against long distance telephone companies to seek redress for their deceptive nationwide practice of profiting from the collection of excess surcharges imposed on their direct dial long distance customers, which surcharges they purport to remit to the federal universal service fund program. The Wexler Firm LLP also serves as co-counsel in cases in state and federal court alleging violations of the Truth-in-Lending Act by a major insurance company who failed to disclose finance charges and in a class action brought by consumers alleging violations of the Truth-in-Lending Act by a bank that issued credit cards without disclosing the actual annual percentage rate charged to outstanding balances.

Additional lawsuits in which the firm is engaged and the success of the firm and the firm's founder, Kenneth A. Wexler, are chronicled on the firm's website located at www.wexlerfirm.com.

## INDIVIDUAL BIOGRAPHIES

### Kenneth A. Wexler
### Founder

Kenneth A. Wexler, the founder of the firm, is a 1980 graduate of the Georgetown University Law Center. He received a Bachelor of Arts degree in 1977, *summa cum laude*, from Washington University in St. Louis, Missouri. Upon graduation from law school, he practiced at the Chicago firm then known as Much Shelist Freed Denenberg Ament & Eiger, P.C., where he became a partner. In January, 1992, Mr. Wexler left Much Shelist to form the firm of Miller Faucher Cafferty and Wexler LLP, where he practiced through December 1999.

Mr. Wexler is a member of the Chicago Bar Association, Illinois State Bar Association, American Bar Association, Chicago Council of Lawyers, Association of Trial Lawyers of America and Illinois Trial Lawyers Association. He is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Seventh Circuit. Mr. Wexler has been admitted to practice *pro hac vice* in state and federal courts in Connecticut, Pennsylvania, Virginia, New York, Washington D.C., Florida, Ohio, New Mexico, Colorado, Massachusetts, Minnesota, Tennessee, Wisconsin and California.

In addition to bar activities, Mr. Wexler is a fellow of The Roscoe Pound Institute, a member of the American Constitution Society for Law and Policy and a delegate of People to People International.

Representative cases with which Mr. Wexler has been involved include[1]:

*In re Synthroid Marketing Litig.,* MDL No. 1182 (N.D. Ill). This multidistrict action arose out of the manufacturer's alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. On August 4, 2000, the court granted final approval of a settlement in the amount of $87.4 million plus interest. Reported decision: 188 F.R.D. 295 (N.D. Ill. 1999).

*In re Lithotripsy Antitrust Litig.,* No. 98 C 8394 (N.D. Ill.). This antitrust class action arose out of alleged stabilization of urologist fees in the Chicago metropolitan area. In granting class certification, Judge George Lindberg stated that counsel for plaintiff and the Class are "experienced in antitrust class action litigation and defendants do not dispute that they are competent, qualified, experienced and able to vigorously conduct the litigation." *Sebo v. Rubenstien,* 188 F.R.D. 310, 317 (N.D. Ill. 1999). On June 12, 2000, the court approved a $1.4 million settlement. *In re Lithotripsy Antitrust Litig.,* 2000 WL 765086 (N.D. Ill. June 12, 2000)

*Feldman v. Motorola, Inc.,* No. 90 C 5887 (N.D. Ill.). A securities fraud class action against Motorola, Inc. and its high ranking officers and directors. In June 1995, the court approved a $15 million settlement. *See, e.g.,* [1993 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,806 (N.D. Ill. Oct. 14, 1993).

*In re Salton/Maxim Sec. Litig.,* No. 91 C 7693 (N.D. Ill.). Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock. On September 23, 1994, Judge James S. Holderman approved a $2.4 million settlement.

---

[1]    The cases addressed below have been partially or completely resolved. The Wexler Firm LLP is currently involved in a number of pending class actions and complex commercial disputes involving individual parties. In the class action arena, The Wexler Firm LLP has a number of leadership positions, and the cases involve antitrust, breach of contract, consumer fraud, breach of fiduciary duties, securities fraud, auditor's liability, derivative actions, unfair and deceptive trade practices and mass torts.

*In re International Trading Group, Ltd. Customer Account Litig.*, No. 89-5545 RSWL (GHKx) (C.D. Cal.). A class action for violation of the anti-fraud provisions of the Commodity Exchange Act. The case settled with individual defendants and proceeded to a judgment against the corporate entity. In that phase, the court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class. Approximately $7 million has been recovered on the judgment.

*Hoxworth v. Blinder Robinson & Co.*, No. 88-0285 (E.D. Pa.) Securities fraud and RICO class action resulting from alleged manipulative practices and boiler room operations in the sale of "penny stocks." *See* 903 F.2d 186 (3rd Cir. 1990). Judgment in excess of $70 million was obtained in February 1992. The judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992). *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

*In re Public Service Company of New Mexico Class and Derivative Litig.*, Master File No. 91-0536-M (S.D. Cal.). Consolidated class and derivative action involving allegations of waste and mismanagement at the Public Service Company of New Mexico. In May 1992, the court approved a settlement of $33 million. *See* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,988 (S.D. Cal. 1992).

*In re First Commodity Corporation of Boston Customer Account Litig.*, MDL-713 (D. Mass.). A class action for violation of the anti-fraud provisions of the Commodity Exchange Act. The action settled for $5.3 million. *See* 119 F.R.D. 301 (D. Mass. 1987).

*O'Brien v. National Property Analysts, Inc.*, No. 88 CIV 4153 (PKL) (S.D.N.Y.). Securities fraud action arising out of the marketing of real estate limited partnership interests. This case was partially settled for $5 million and the invalidation of wraparound mortgages worth as much as $250 million.

*In Re Cellular Phone Cases*, Coordinated Proceeding No. 4000 (Superior Court, San Francisco County, Cal.). A class action under California's Cartwright Act which alleged price fixing of cellular telephone service in the San Francisco area market. On February 20, 1998, the court granted final approval to a proposed settlement that provides $35 million in in-kind benefits to the Class and a release of debt in the amount of $35 million.

*Garabedian v. LASMSA Limited Partnership*, No. 721144 (Superior Court, Orange County, Cal.). A class action under California's Cartwright Act which alleged price fixing of cellular telephone service in the Los Angeles area market. By order of January 27, 1998, the court granted final approval to two proposed settlements that provide $165 million in in-kind benefits.

*Lobatz v. AirTouch Cellular*, 94-1311 BTM (AJB) (S.D. Cal.). A class action alleging price fixing of cellular telephone service in San Diego County, California. On June 11, 1997, the court approved a partial settlement in the amount of $4 million. Judge Barry Moskowitz commented that "I do believe that both law firms in representing the plaintiffs were very skillful and knowledgeable in this field and the work that they did was of top quality." (6/11/97 Tr. at 8.) On October 28, 1998, the court approved another settlement that entailed $4 million worth of cash and in-kind benefits. In an order entered May 13, 1999, Judge Moskowitz stated that "[t]hrough the course of this complex

States District Court for the Northern District of Illinois, and United States District Court for the Southern District of Illinois.

### *Jennifer Fountain Connolly*
**Associate**

Jennifer Fountain Connolly is a 1998 graduate of the University of Denver College of Law. She received a Bachelor of Arts degree with high honors in 1993 from the University of Chicago. Ms. Connolly is admitted to the bars in Illinois and Colorado, the United States Court of Appeals for the Seventh and Tenth Circuits, and the United States District Courts for Northern District of Illinois and the District of Colorado. Prior to joining the firm in 2002, Jennifer handled similar litigation matters for a law firm in Denver, Colorado for two years and worked as an Assistant Attorney General in the Business Regulation Unit of the Colorado Attorney General's office for two years.

### *Anthony J. Sievert*
**Associate**

Anthony J. Sievert graduated with distinction in 2000 from the University of Wisconsin Law School, where he was an articles editor at the Wisconsin Law Review. He also graduated with distinction with a Bachelor of Arts degree from the University of Wisconsin-Madison in 1997. Prior to joining the firm, Mr. Sievert worked as a staff law clerk for the United States Court of Appeals for the Seventh Circuit and as an associate at Sidley, Austin, Brown & Wood, where his practice included complex commercial litigation. He is admitted to the bar in Illinois, Wisconsin and the United States District Court for the Northern District of Illinois.

### *Michael L. Duffy*
**Associate**

Michael L. Duffy is a 2000 graduate of The Ohio State University College of Law, where he was a Managing Editor of The Ohio State Law Journal and a member of the Products Liability Moot Court Team. He received a Bachelor of Arts degree, magna cum laude, Phi Beta Kappa, with honors in 1997 from Miami University. Prior to joining the firm, Mr. Duffy worked as an associate in two large defense firms, in which he focused on complex commercial litigation matters. He is admitted to the bar in Illinois, the United States District Court for the Northern District of Illinois, the United States District Court for the Southern District of Illinois and the United States Court of Appeals for the Seventh Circuit.

### *Amber M. Nesbitt*
**Associate**

Amber M. Nesbitt was admitted to the Illinois Bar in November of 2004. She graduated from the University of Michigan in May of 2000 with a Bachelor of Arts in psychology and sociology. She received her J.D. *magna cum laude* from Loyola University of Chicago College of Law in May of 2004. At Loyola, she was a member of the Loyola University Law Journal and the Publication Editor of the Public Interest Law Reporter. She has worked at The Wexler Firm LLP since February of 2003 as a law clerk and summer associate. Ms. Nesbitt is admitted to the bar of the State of Illinois and the United States District Court for the Northern District of Illinois.