IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAURICE LEVIE, individually and on behalf of all other similarly situated, ) ) ) Plaintiff, ) ) v. ) ) SEARS ROEBUCK & CO., ALAN J. LACY, ESL ) PARTNERS, L.P. and EDWARD S. LAMPERT, ) ) Defendants. ) | No. 04 C 7643 Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maurice Levie, individually and on behalf of all others similarly situated, has brought a three count amended putative class action complaint against defendants Sears Roebuck & Company and its Chief Executive Officer, President and Chairman of the Board Alan J. Lacy (jointly as the "Sears defendants"), and ESL Partners, LP and its controlling person Edward S. Lampert (the "ESL defendants") alleging violations of §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. Defendants have moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, those motions are denied.

# FACTUAL ALLEGATIONS[1]

Plaintiff is a former shareholder of Sears who sold his shares at a low price at a time when defendants were negotiating the take-over of Sears by Kmart for a "huge premium to the market price of Sears common stock." During that period the ESL defendants were the majority owners of Kmart. When the Kmart takeover was announced, the price of Sears' common stock jumped over 15% in a single day.

Plaintiff alleges that during the period in question ( September 16, 2004 through November 16, 2004) the Sears defendants made numerous public statements about Sears' ongoing business operations, plans and strategy. In particular, plaintiff alleges that on June 8, 2004, Sears and Kmart announced that Sears would be acquiring ownership of real estate and/or leases for approximately 54 Kmart stores. The announcement spurred rumors of a bigger deal between Sears and Kmart. At that time ESL owned approximately 14% of Sears stock and had already filed on May 28, 2004, for permission to continue to acquire up to 24.99% of Sears stock.

Almost immediately after the June 8, 2004, deal closed, defendants Lacy and Lampert began negotiating a "larger scale transaction between Sears and Kmart." Between June 1 and June 8, Sears stock rose from $37.65 per share to $40.18 per share with approximately 10 million shares traded on June 8, five times the average daily volume. This, according to plaintiff, demonstrates that after June 8 defendants knew that any news of potential transactions between

---

[1]The facts are taken from plaintiff's amended complaint and are presumed to be true for purposes of a motion to dismiss for failure to state a claim.

2

Sears and Kmart was material to investors. When no further announcements were made, the price began a steady decline.

On July 1, 2004, ESL filed a Schedule 13G with the SEC in which it certified that it had not acquired and was not holding the Sears stock for the purpose of or with the effect of changing or influencing control of Sears.

Plaintiff claims that once Lampert began negotiations with Lacy regarding a potential merger or other business combination that could have affected the change and control of Sears, ESL was legally required to file a Schedule 13D, or amend its July 1, 2004, Schedule 13G to disclose that ESL's purpose was to: (1) acquire control of Sears; (2) merge Sears with Kmart; or (3) make major changes to Sears' business or corporate structure. Plaintiff asserts that ESL and Lampert's duty to update the filings continued throughout the alleged class period. Yet, at no time before the announcement of Kmart's acquisition of Sears did ESL or Lampert ever file the Schedule 13D or correct the July 1, 2004, Schedule 13G.

By September 29, 2004, the negotiations had reached what plaintiff terms as an "advanced state." In a press release issued that day, Sears represented that it would take possession of the stores beginning in the spring 2005, as opposed to taking some of the stores in 2004 as announced previously in a June 30, 2004, press release. Because Sears was not required to pay for a store until it took possession, the change allowed Sears to conserve cash.

On October 31, 2004, Lacy met with Lampert to continue merger discussions. Lacy had previously told the Sears' Board of Directors that he would be meeting with Lampert to discuss a business combination between Sears and Kmart. Prior to that meeting Lacy had engaged investment banker Morgan Stanley & Co. to advise it with respect to the business combination.

3

The following day, Lacy called a special meeting of the Sears' board at which he reported that he had met with Lampert to discuss a business combination of the two companies. The board indicated support and authorized Lacy to continue such discussions. Around this time Sears formerly retained the law firm of Wachtell Lipton Rosen and Katz to represent it in connection with a potential merger.

On November 5, 2004, Vornado Realty Trust announced that it had acquired an approximate 4.3% interest in Sears' equity, causing Sears and Kmart to "accelerate the time frame for implementing the proposed business combination." Sears issued a statement indicating that it was "pleased that Vornado sees value in our stock," and that it was committed to its future as a retailer, stating:

> We're taking strong actions to improve our store performance, continuing to expand our direct customer channels and building our home services businesses, while pursuing an aggressive off-mall growth strategy.

Plaintiff alleges that this statement by Sears was materially misleading because it failed to disclose the merger discussions and that Sears was in the open market actively buying shares of its own stock.

Immediately after the Vornado announcement, the price of Sears' stock rose from $37.18 per share on November 4, 2004, to $45.88 per share on November 5. It then fell to $43.14 per share on November 8. According to the complaint, Sears continued to allow misinformation about the dealings between Sears and Lampert to permeate the market. In its November 14, 2004, final edition the Chicago Tribune reported that a "source close to the [Sears] Board, said Sears was not aware whether Lampert was working with Vornado or what Lampert's plans were."

4

Plaintiff and the class he purports to represent sold their stock between September 19 and November 16, 2004. On November 17, 2004, Sears and Kmart announced that Kmart would acquire Sears with Kmart stockholders receiving 55% of the combined companies' equity and Sears Holding Corp., the surviving company in the merger. Upon the announcement, Sears shares jumped $7.79 per share or 17% to $52.91 per share. Kmart shares rose $7.78 per share or 7.7% to $109 per share, and the volume of Sears shares traded was nearly ten times the average daily trading volume.

## **DISCUSSION**

Both the Sears defendants and the ESL defendants have moved to dismiss the amended complaint. The ESL defendants argue that plaintiff's claims against them fail as a matter of law because plaintiff's theory is based on the ESL defendants' failure to file accurate statements as required under § 13(d) of the Exchange Act, and there is no private right of action for damages under that section. Relief for such violations, according to the ESL defendants is by way of a claim under § 18(a), not under § 10(b) as alleged by plaintiff. The Sears defendants argue that: (1) they were under no duty to disclose the merger negotiations prior to the date of the announcement; and (2) that the complaint fails to allege adequately that either Sears or Lacy acted with scienter or intent to defraud.

**ESL Defendants' Motion to Dismiss**

In Count I, plaintiff alleges that the ESL defendants have violated § 10(b) and Rule 10b-5 by failing to amend the July 1, 2004, Schedule 13G or file an accurate Schedule 13D once ESL Partners had formulated an intent to effect the change and control of Sears.

The ESL defendants argue that this claim fails because it is well-established that there is no private right of action for damages under § 13(d), and that the exclusive remedy for a violation of § 13(d) is a claim under § 18(a), 15 U.S.C. § 78r(a), which provides an explicit remedy to shareholders who purchased or sold securities in reliance on a false or misleading statement in a Section 13(d) filing. The complaint contains no claim under § 18(a) because, defendants argue, such a claim requires proof of actual reliance, something plaintiff cannot plead or prove.

In response, plaintiff argues that the ESL defendants' intentional or reckless failure to make complete and accurate disclosures in their Schedule 13G and to file the required Schedule 13D are the predicate acts upon which plaintiff's § 10(b) claims are based. Thus, plaintiff argues that it is irrelevant that there is no private right of action for damages under § 13(d) or that the exclusive remedy for a § 13(d) violation is found in § 18.

Plaintiff does not dispute that there is no implied private right of action for damages under § 13(d). See Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., 286 F.3d 613, 619 (2d Cir. 2002) (and cases cited therein). As defendants point out, one key reason the courts have consistently refused to imply such a right of action is that an explicit remedy is available under § 18(a). Id. Section 18(a) provides, in relevant part:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to . . . any [SEC] rule or regulation . . . which statement was at the time and in light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person . . . who, in reliance upon such statement shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

As the section indicates, a plaintiff asserting a claim under § 18(a) is required to plead and prove reliance. According to the ESL defendants, a § 18(a) plaintiff must prove actual (eyeball") reliance, i.e., that the plaintiff actually reviewed the SEC filing containing the alleged misstatement and actually purchased or sold shares in reliance upon the specific misrepresentation. See In re Suprema Specialties, Inc. Securities Litigation, 438 F.3d 256, 283 (3rd Cir. 2006). In contrast, plaintiffs asserting a claim under § 10(b) are entitled to plead constructive or presumptive reliance. Id. In addition, under § 18(a), lack of scienter is an affirmative defense to be proved by the defendant, while under § 10(b) defendants' scienter is an element of the plaintiff's claim. As the ESL defendants note, these differences have led some district courts to conclude that a claim under § 18(a) provides the exclusive remedy for violations of § 13(d). See e.g. Issen v. GSC Enterprises, Inc., 508 F. Supp. 1278, 1295 (N.D. Ill. 1981); Pearlstein v. Justice Mortgage Inv., 1978 WL 1143 at *3-4 (N.D. Tex. 1978). Those courts reason that no plaintiff, if given the choice, would proceed under § 18(a), with its "eyeball reliance" requirement as opposed to § 10(b), where reliance can be presumed upon a showing of materiality. See Pearlstein, 1978 WL 1143 at *4. Thus, the Pearlstein court speculated that the practical effect of allowing a claim under § 10(b) predicated on a violation of § 13(d) "would be to erase Section 18 from the statute since it is highly improbable that any complaint would ever allege conduct violating solely Section 18." Id. at *4 n.2.

To this court's knowledge, no court of appeals has squarely addressed this issue. In Touche Ross v. Redington, 442 U.S. 560, 573-74 (1979), the Supreme Court has noted that there is evidence to support the view that § 18(a) was intended to provide the exclusive remedy for

misstatements contained in any reports filed with the SEC, but did not need to reach the issue. This court also need not reach the issue because plaintiff's claims as asserted do not fall within the purview of § 18(a), which requires the SEC filing to contain a statement that was false or misleading at the time it was made.

Plaintiff's claim is not that § 13(d) filings by the ESL defendants were false at the time made, but that they should have been amended (i.e. a failure to file) once the ESL defendants had formulated an intent to effect a change in control of Sears. Under the ESL defendants' theory that § 18(a) provides the exclusive remedy for any claim based on misstatements or omissions in SEC filings, plaintiff would have no means by which to pursue his claim. Yet, even Pearlstein recognizes that a claim under § 10(b) is available for misrepresentations and documents not considered "filed" for purposes of § 18. Pearlstein, 1978 WL 1143 at*5-6. Because plaintiff's claims are based on a failure by defendants to file required documents rather than on documents that were misleading when filed, the court concludes that
§ 18(a) is inapplicable and that plaintiff can maintain a claim under § 10(b). Accordingly, the ESL defendants' motion to dismiss is denied.

**Sears Defendants' Motion to Dismiss**

In Count II, plaintiff alleges that the Sears defendants violated § 10(b) and Rule 10b-5 by failing to disclose the merger discussions between Sears and Kmart. The Sears defendants argue that the count fails to state a claim for two independent reasons: (a) there was no duty to disclose the merger negotiations and; (b) the complaint fails to allege that either Sears or Lacy acted with scienter. The court disagrees with both of these positions.

With respect to the argument that the Sears defendants had no duty to disclose the merger negotiations earlier than they did, defendants rely on the general proposition that silence, absent a duty to disclose, is not misleading under Rule 10b-5. Basic Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988). This is, of course, an accurate statement of the law. Where the Sears defendants' argument becomes troublesome is their assertion that clear Seventh Circuit precedent recognizes that a corporation need not disclose to investors trading in the stock market ongoing negotiations for a merger. The Sears defendants' support for this broad statement is the Seventh Circuit decision in Flamm v. Eberstadt, 814 F.2 1169 (7th Cir. 1987),[2] in which the court held that the existence of merger negotiations do not become "material" until the price and structure of the deal have become agreed upon. In Basic, however (decided after Flamm), the Supreme Court rejected this bright line test of materiality, adopting instead the standard it had set forth previously in cases under § 14(a) in TSE Industries, Inc. v. Northway, Inc., 426 U.S. 438 (1976), whereby an omitted fact is material if there is a substantial likelihood that its disclosure would have been considered significant by a reasonable investor. In the merger context, the Court stated that materiality depends upon the probability that the transaction will be consummated and its significance to the issuer of the securities. This determination is fact-specific and must be made on a case-by-case basis. Basic, 458 U.S. at 239-41. Thus, whether and/or when the Sears-Kmart merger negotiations became material is a fact question not to be decided on a motion to dismiss as a matter of law.

---

[2]The Sears defendants actually cite Jordan v. Duff, 815 F.2d 429, 431 (7th Cir. 1987), for this proposition, but Jordan, which involved a privately held corporation, simply quotes Flamm without discussion.

9

Rule 10b-5 "makes it unlawful for any person to make any untrue statement of a material fact or to omit to state the material fact necessary to make the statements made, in light of the circumstances under which they were made not misleading . . . in connection with the purchase of sale of any security." 17 C.F.R. § 24.10b-5(b). If the merger negotiations became material at a point in time when the Sears defendants were making announcements about the purchase of Kmart stores, a jury could find that the existence of the merger negotiations was a material fact necessary to make the store purchase statements not misleading. Accordingly, the Sears defendants' motion to dismiss based on a lack of duty to disclose is denied.[3]

Next, the Sears defendants argue that the complaint fails to allege that they acted with scienter. The scienter requirement for a Rule 10b-5 claim has been defined as a "mental state embracing intent to deceive, manipulate or defraud." Ernst and Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). To plead scienter under the Private Securities Litigation Reform Act, ("PSLRA"), § 78u-4(b)(2), plaintiff must plead sufficient facts to create "a strong inference" of scienter. In the Seventh Circuit, no particular facts (such as facts showing motive and opportunity to commit fraud) must be pled; instead "the best approach is for courts to examine all of the allegations in the complaint and then decide whether collectively they establish such an inference." Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 601, (7th Cir., 2006). Facts showing motive and opportunity may be useful indicators of scienter, but the statute neither requires that they be pled, nor does it indicate that pleading motive and intent is sufficient to create the necessary inference. Id. Thus, all that is necessary for a complaint to survive is that

---

[3]Because the court concludes that plaintiff has alleged a duty to disclose based on the merger negotiations and the store purchase announcements, it need not reach plaintiff's alternate argument that Sear's repurchase plan also created a duty to disclose the merger plans.

it allege facts from which a reasonable person could infer that the defendant acted with the required intent. Id. A plaintiff must create the inference as to each individual defendant in a multiple defendant case. Id.

In the instant case, the complaint pleads sufficient facts to create a strong inference of scienter as to both Lacy and Sears. Lacy personally participated in the merger negotiations at every stage. He, perhaps more than anyone, knew the status of the proposed merger and at the same time knew Sears was repurchasing its own stock and potentially misleading the public about Sears' intent to continue its retail business by purchasing off-mall Kmart stores.

The Sears defendants argue that Lacy and Sears had no motive to keep the potential merger quiet and thus prevent increase in the price of Sears stock since any competing bids would only have served to benefit Sears stockholders including Lacy, by increasing the price. Of course, plaintiff alleges that Sears, with Lacy's knowledge, was at that time repurchasing its own shares at what plaintiff contends was an artificially low price, effectively increasing ESL's interest in Sears and making the merger easier.

In short, the amended complaint contains more than enough factual detail for a reasonable person to conclude that Lacy was aware that the statements being made were misleading and either intentionally chose to ignore them, or intentionally elected to mislead the public. Because Lacy was acting within his scope of his position as CEO of Sears, his alleged knowledge of the falseness of the statements can be imputed to Sears. Id. Accordingly, the court concludes that the amended complaint alleges scienter adequately as to both Lacy and Sears. The motion to dismiss is denied. In addition, because defendants' motion to dismiss the §

11

20(a) control person claims in Count III is predicated on defendants' attack on the substantive claims in Counts I and II, the motion to dismiss Count III is also denied.

## CONCLUSION

For the reasons set forth above, all defendants' motions to dismiss the amended complaint are denied. Defendants are directed to answer the complaint on or before April 19, 2006. The parties are directed to file a joint status report using the court's form on or before April 24, 2006. This matter is set for a report on status on May 4, 2006, at 9:00 a.m.

**ENTER:** **March 22, 2006**

_____
**Robert W. Gettleman**
**United States District Judge**