UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

-------------------------------------------------------------X

MAURICE LEVIE, individually and on      :      Civil Action No. 04-C-7643
behalf of all others similarly situated,      :
     :
           Plaintiff,      :
     :
      -against-      :
     :
SEARS ROEBUCK & CO. ALAN J. LACY, : 
ESL PARTNERS, L.P. and EDWARD S.      :
LAMPERT,     :
     :
          Defendants.      :
     :

-------------------------------------------------------------X

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR MODIFICATION OF PRETRIAL SCHEDULE

### I.     INTRODUCTION

Plaintiffs seek an order under Rule 16 Fed. R. Civ. P. to modify the discovery orders entered

in this case (Docket No. 142, 150 and 198) to the following extent:

1)      an extension of the discovery cut-off by 33 days until July 15, 2008;[1]

2)      establishing the following procedure for the conduct of expert discovery:

       (a)      each party to serve any expert reports on issues as to which the party
               bears the burden of proof by May 15, 2008;[2]

---

[1] This is a substantial compromise from Plaintiffs' earlier request to Defendants' counsel for an extension through August 31, 2008 (Squitieri Decl., Exhibit C), which Defendants declined on the grounds that they wanted to adhere as closely as possible to the original dates. *See* Squitieri Decl. Exhibits C and G.

[2] Plaintiffs' believe that the simultaneous exchange of expert reports by each party on the issues on which they respectively bear the burden of proof will save two months and is particularly appropriate here in light of the nature and number of affirmative defenses asserted by Defendants on which they have the burden of proof. Defendants have the burden of proof when asserting the affirmative defense of failure to mitigate damages. *Lasley v. Moss,* 500 F.3d 586, 590 (7th Cir. 2007). Defendants have the burden of proof when asserting the affirmative defense of supervening cause. *Bartlett Commons Shopping Center v. Schultz Sav-o-Stores, Inc.,* No. 92 C 2787, 1992 U.S. Dist. LEXIS 173334 at *3 (N.D.Ill., Nov. 12, 1992). Defendants have the burden of poof on their affirmative defense of unjustified reliance by Plaintiffs. *See Sundstrand v. Sun Chemical,* 553 F.2d 1033 (7th Cir.. 1977); *AES*

      (b)      each party to serve any rebuttal reports within 30 days of receipt of the expert report to be rebutted; and

      (c)      parties to complete deposition of all experts by July 15, 2008.

3)      an order allowing Plaintiffs' counsel to conduct the deposition of three non-parties (Lehman Brothers, Inc., Morgan Stanley & Co. and Goldman Sachs) by May 31, 2008 – all of whom have previously produced documents pursuant to Plaintiffs' subpoena duces tecum;[3]

4)      an order requiring Defendants to respond to Plaintiffs Third Set of Interrogatories served on March 28, 2008 consisting of only 10 interrogatories with no subparts.[4]

This relief should be granted because:  (1) it is the first request for an extension of the June 12, 2008 discovery cut off date; (2) the extension requested is short (33 days); (3) the extension will not affect trial or any other dates scheduled by the Court; (4) Plaintiffs have diligently and efficiently completed depositions of the Defendants' witnesses without exceeding the 10 deposition limit of Fed. R. Civ. P. 30 (a)(2) (A); (5) Plaintiffs can complete the three non-party depositions before the original June 12, 2008 discovery cut-off date (all three non-parties have produced documents pursuant to subpoena duces tecum and each deposition can be completed within two and one-half hours); and (6) Defendants should be compelled to answer the 10 interrogatories served by Plaintiffs on March 31, 2008 (75 days before the final discovery cut-off; but on the last day of the March 31, 2008 cut-off set by Magistrate Keys).[5]

---

v. Dow Chemical, 157 F. Supp. 2d 346 (D. D.C. 2001); Citizens & Southern SEC Corp. v. Braten, 733 F. Supp. 655 (S.D.N.Y. 1990).

[3]  Plaintiffs counsel, Lee Squitieri has agreed to complete each deposition within 2 ½ hours.  Squitieri Decl. ¶ 8.

[4]  Defendants have refused to answer the interrogatories because, while served 75 days before the final discovery deadline set by this Court, Defendants contend that the interrogatories should have been served by at least March 1, 2008 to allow for responses by March 31, 2008, the interim fact discovery deadline imposed by Magistrate Keys. Docket No. 150.

[5]  Defendants have refused to answer the interrogatories because, while served 75 days before the final discovery deadline set by this Court, Defendants contend that the interrogatories should have been served by at least March 1, 2008 to allow for responses by March 31, 2008, the interim fact discovery deadline imposed by Magistrate Keys.

Moreover, presented with 51 relevant defense witnesses, at least 14 potential third-party witnesses, and hundreds of thousands of pages of relevant documents, Plaintiffs' counsel has expended great thought and effort to pare down the discovery taken to the general discovery limits. However, given the nature of this case and the breadth and depth of the facts and issues presented, Plaintiffs find it necessary to take an additional three depositions and propound an additional 10 interrogatories. Plaintiffs' counsel has negotiated, in good faith, for several months trying to secure these depositions and interrogatory responses. The parties are at an impasse – necessitating this Motion.

## II.    BACKGROUND

A one month extension of the June 12, 2008 discovery cut-off date is justified based on the litigation history of this action since the Court's issuance of the pre-trial schedule in August 200. *See* Squitieri Declaration ¶ 5 to ¶ 9.

This is a large securities class action case against two separate groups of Defendants. Although the class period certified in this case is relatively short (September 9, 2004 through November 16, 2004 inclusive), it involves hundreds of millions of dollars in claimed damages.[6] Plaintiffs are litigating against two sets of Defendants each of whom has nearly separate liability profiles. Defendants asserted seventeen affirmative defenses each. *See* Docket Nos. 61 and 63.

---

Docket No. 150. However, when requested by Defendants' counsel, Plaintiff agreed to answer contention interrogatories which were served upon plaintiffs after March 1, 2008.

[6]  The class has been certified and withstood a 23(f) petition by Defendants.  On August 28, 2007, the Court entered an Order certifying a class under Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of: (1) investors who sold Sears' shares during the class period (September 9, 2004 through November 16, 2004) excluding short sellers of Sears' shares, except for those short sellers who remain in a short position at the close of trading on November 16, 2004; (2) sellers of Sears' call options during the class period whose call option positions remained open (were not repurchased) after the close of trading on November 16, 2004;  (3) buyers of Sears' put options who purchased their put options during the class period, whose put options positions remained opened as of the close of trading on November 16, 2004; (4) buyers of Sears' call options during the class period whose call options expired worthless before the last day of the class period; and/or (5) sellers of Sears' put options during the class period who covered (repurchased) those put options during the class period.

Notwithstanding the relatively short class period of September 9 through November 16, 2004, the relevant facts and circumstances extend as far back as February 2004.  As a result, there was a voluminous production of documents by Defendants which was not completed until March 18, 2008.  *See* Squitieri Decl. ¶ 6.  The last production of documents by Defendants in March 2008 contained significant evidence in support of Plaintiffs' claims.  For example, those documents prove that Sears had retained a financial advisor in connection with the Sears-Kmart merger as early as October 19, 2004, contrary to the disclosure in the Proxy Statement filed with SEC that stated Sears retained Morgan Stanley as its financial adviser "subsequent" to November 1, 2004.

Defendants recognized the complexity of the action.  In their initial Rule 26(a) disclosures, Defendants Sears and Lacy (alone) identified 12 witnesses.  Later, when responding to Plaintiffs' seven interrogatories, Sears and Lacy identified another 27 additional individuals and Defendant ESL identified 12 others.  Defendants have thus far identified 51 different people with information relevant to Plaintiffs' case – who could potentially offer testimony at trial.  However, through diligent pre-trial preparation, Plaintiffs' counsel was able to limit the party depositions to 10.

Plaintiffs' counsel have proceeded diligently and efficiently in this action, allowing Plaintiffs to accumulate overwhelming evidence of Defendants' liability without (thus far) exceeding the ten deposition or twenty-five interrogatory limit imposed by the Federal Rules of Civil Procedure.  Moreover, by April 8, 2008, well before the June 12, 2008 deadline, Plaintiffs had completed all of the party depositions they intend to take.

In addition, of the 14 non-parties witnesses that have been subpoenaed to produce "documents-only," Plaintiffs' counsel have further narrowed the list of non-parties to be deposed from five to just three.    These non-party witnesses are Lehman Brothers and Morgan Stanley, the investment bankers for Kmart and Sears respectively; as well as a witness from Goldman Sachs.  All

three have been served with subpoenas ad testificandum.  As to these three depositions, Plaintiffs' counsel has agreed to conclude each of these depositions with 2½ hours of testimony.  These remaining non-party depositions could be easily accommodated within the remaining discovery through June 12, 1008; therefore, they will not delay the experts' reports beyond the proposed May 15, 2008 date.  Moreover, Plaintiffs have already engaged their expert witness and identified the firm to Defendants' counsel.  *See* Squitieri Decl., n. 1.

### III.   LEGAL AUTHORITIES

### A.   The "Good Cause" Required To Modify  The Pretrial Scheduling Order In This Case Is Present Here

Rule 16(b) of the Federal Rules of Civil Procedure provides, in part, that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Fed. R. Civ. P. 16(b); *Campania Management Co., Inc., v. Rooks, Pitts & Proust*, 290 F.3d 843, 851 (7th Cir. 2002); *U.S. v. 1948 S. Martin Luther King Drive*, 270 F.3d 1102, 1110 (7th Cir. 2001).   The Advisory Committee comments in the 1983 Amendments to the Federal Rules of Civil Procedure have been applied to hold that "party can show 'good cause' if it cannot reasonably meet the discovery schedule despite its diligence."  *Pizza Hut, Inc. v. Midwest Mechanical, Inc.*, No. 86 C 5487, 1988 U.S. Dist. LEXIS 890, *4 (N.D. Ill. January 29, 1988).   The focus of the "good cause" analysis under Rule 16(b) is the diligence of the party seeking the modification.  Fed. R. Civ. P. 16(b); *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005); *Johnson v. Mammoth Recreations,* 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment.").[7]  *See also Humphrey v. East Mfg. Corp.,* No. 98 C 50413, 2003 U.S. Dist.

---

[7]   *Johnson v. Mammoth Recreations*, 975 F.2d 604 (9th Cir. 1992) is cited heavily within the 7th Circuit as an authoritative case on Rule 16(b) motions.  *Trustmark Ins. Co.*, 424 F.3d 542, quotes to *Johnson* when setting forth

LEXIS 9700 at *12 (N.D. Ill. June 11, 2003).  In applying this standard the "the focus of [a court's] inquiry is upon the moving party's reasons for seeking modification."  *Coburn v. DaimlerChrysler Servs. N. Am., LLC,* No. 03 C 759, 2005 U.S. Dist. LEXIS 40255 at *14 (N.D.Ill. April 13, 2005), *quoting Johnson*, 975 F.2d at 609 ("Stating that the moving party must show that 'despite the diligence of the party seeking the extension,' it cannot reasonably meet the pretrial schedule as is.").  Likewise, in *Coburn,* the court held:

> A decision of whether to extend discovery or not, or concerning the scheduling of discovery, is committed to the sound discretion of the district court, which must try to fashion a sensible and fair result under the circumstances presented.

*Coburn,* 2005 U.S. Dist. LEXIS 40255 at *7-8.

In this case, Plaintiffs have diligently and efficiently pursued discovery and determined that efficient prosecution requires slightly more deliberation.  But as more fully described in the Squitieri Declaration, the deliberate and thoughtful efforts of Plaintiffs' counsel have resulted in a very efficient litigation process which saves both sides' times and legal costs.  Squitieri Decl. ¶¶ 5-9.  Plaintiffs were able to complete all of the parties' depositions they sought despite Defendants' delayed production of documents which had them producing documents as late as March 18, 2008.  Squitieri Decl. at ¶ 6.  The principal reason for the delay in completing discovery is that Plaintiffs' expert cannot complete a report for Plaintiffs until May 15, 2008, due to commitments in other cases proceeding on an unanticipated expedited basis.  Squitieri Decl. at ¶ 10.

"[A] party demonstrates sufficient good cause to alter the discovery deadlines established by a pretrial scheduling order when it shows that, 'despite their diligence, the established timetable could not be met.'"  *Gernaat v. Four Star Taxi, Inc.*, No. 2:07 CV 83 2008 U.S. Dist. LEXIS 23806,

---

the diligence standard for "good cause" and refers to the 9th Circuit as a "sister circuit" on the matter.  Accordingly, where the 7th Circuit has not addressed an issue, this motion refers to the *Johnson* opinion to add depth to district court opinions.

*3 (N.D. Ind. March 24, 2008), *quoting Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995).

Here, the reason for the delay is the experts' other commitments and the parties' deposition schedule.

*See* Squitieri Decl. at ¶ 10.   In similar circumstances in *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir.

2000), the Seventh Circuit held that:

> Furthermore, because both sides were at fault for the difficulties in scheduling depositions, which pushed discovery up to the December deadline, the delay in finishing the experts' reports was partially justified.  While in most cases, a district court would be fully within its discretion in strictly applying the rules and excluding reports that were incomplete or submitted a date late, in this instance we can see no harm that came from Sherrod's failure to meet the December 30 deadline.  Because Rule 37 does not require sanctions against a non-disclosing party if that party's violation was harmless, the district court abused its discretion by excluding Sherrod's experts without any indication that the defendants had been harmed by this discovery violation.

*Sherrod*, 223 F.3d at 613.

   **B.      The Nature of this Case Necessitates
             The Additional Discovery Requested By Plaintiffs**

   Discovery beyond the limitations of Rule 33 and 30(a)(2)(A) is necessary due to the nature

and complexity of this case, the numerous factual and legal issues involved, the amount in

controversy and the number of individuals and entities that took part in (or provided services relating

to) the relevant transactions between Defendants.

   Discovery is generally allowed under Rule 26(b)(2) unless it is unreasonably cumulative or

burdensome considering the circumstances of the case.  *See, e.g., Estate of Manship v. U.S.*, 232

F.R.D. 552, 558-59 (M.D. La. 2005) (*reversed on other grounds by* 240 F.R.D. 229); *American*

*Chiropractic Assoc. v. Trigon Healthcare, Inc.,* No. 1:00CV00113, 2002 U.S. Dist. LEXIS 6199, *3-

4 (W.D.Va. March 18, 2002).  Courts have recognized that complex, high-stakes cases of this nature

are distinguishable from simpler cases where the standard discovery limitations are more applicable.

*See, e.g. RxUSA Wholesale, Inc. v. McKesson Corp.*, No CV-06-4343, 2007 U.S. Dist. LEXIS 45955

(E.D.N.Y. June 25, 2007); *Campo v. Am. Corrective Counseling Servs.*, No. C-01-21151, 2007 U.S. Dist. LEXIS 87150 at *17 (N.D. Cal. November 5, 2007). As explained below, Plaintiffs' requests conform with the principles of Rule 26(b)(2); therefore, leave to serve interrogatories and take three non-party depositions should be granted.

The legal issues in this litigation are numerous and varied. Plaintiffs' Section 10(b) and Rule 10b-5 claims have several distinct elements which must be established by the evidence uncovered through discovery, namely: (1) the Defendant made a false statement or omission; (2) of material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which plaintiff justifiably relied; and (6) that the false statutes omission proximately cause the Plaintiffs' damages. *See e.g., Otto v. Variable Annuity Life Insurance Co.*, 134 F.3d 841, 851 (7th Cir. 1998). These elements can only be proven through an investigation of the many complex and detailed factual circumstances of the case.

Defendants themselves recognized early in this litigation that discovery in would require an inquiry into numerous distinct issues. Defendants' combined assertion of over 30 affirmative defenses demonstrates this very point. Furthermore, Sears Rule 26(a) disclosures list no less than four relevant separate areas of discovery: (1) negotiation of merger of Sears and Kmart; (2) Morgan Stanley's role in the merger; (3) information related to Sears stock repurchase program; and (4) the sale of Kmart stores to Sears in 2004. Moreover, in the Sears Defendants' memorandum of law in support of their motion to dismiss, they raise such broad factual issues as: the point in time when a duty to disclose arises; whether the announcements concerning Sears' purchase of Kmart stores were misleading; and Sears' stock repurchase program. ESL Defendants' motion to dismiss raised different factual issues including: the source of ESL's duty to Plaintiffs and the Class; ESL's

disclosure obligations; and the materiality of information available at various points during the class period. Squitieri Decl. ¶¶ 5, 6.

Discovery into all of these issues is reasonably calculated to lead to both direct and circumstantial evidence in support of the elements of Plaintiffs' claims, including the parties' scienter and the materiality of undisclosed information.

### C.    Plaintiffs' Request For Three Additional Brief Non-Party Depositions And Answers To Ten Interrogatories Is Reasonable

It is common in complex, high-stakes, securities litigation such as this for the plaintiff to be allowed dozens of depositions.[8]  In fact, district courts have granted leave for securities plaintiffs to take dozens of depositions despite the ten deposition limit; *In re Abbott Lab. Sec. Litig.*, No. 92-CV3869, 1995 WL 792083 at *7 (N.D.Ill. July 3, 1995) (allowing plaintiffs 50 depositions over 76 deposition days); *Strode v. City of Venice, Ill.,* No. 06-CV-228-GPM, 2007 WL 1595559 at *1 (S.D.Ill. June 1, 2007) ("there are six individual defendants and the City of Venice; therefore, limiting the plaintiffs to ten depositions is obviously unrealistic."); *In re King Resources, Co. Sec. Litig.*, 420 F.Supp. 610, 635 (D. Colo., 1976) (allowing plaintiffs over 50 depositions and defendants roughly 25 depositions); *In re Cisco Systems., Inc. Sec. Litig.*, No. C01-20418, slip op. (N.D. Cal. Oct. 25 2004)(allowing plaintiffs 28 depositions).  Moreover, additional depositions are reasonable in cases, such as this one, where information must be collected from multiple defendants.  In this case, the four defendants have identified more than 50 individuals with knowledge directly relevant to this action (in addition to the individuals from 14 non-parties connected to the relevant transactions).

The additional depositions sought do not offend the principles of Rule 26(b)(2).  They are not cumulative or duplicative.   Attesting to the significance of those witnesses is the fact that

---

[8]  In fact, during the January 11, 2008 status conference, this Court recognized that additional discovery is reasonable in complex cases of this nature.

Defendants' counsel has repeatedly refused Plaintiffs' counsel's offer to forego those depositions in exchange for Defendants' agreement not to offer those witnesses' testimony in a summary judgment motion or at trial.  Squitieri Decl. ¶ 7.

The interrogatories which Defendants refuse to answer (Squitieri Decl. ¶ 3) are simple contention interrogatories which are usually served and answered toward the conclusion of discovery.  *See e.g. Ziemack v. Centel Corp.,* 92 C 3551, 1995 U.S. Dist. LEXIS 18192 at *5 (N.D. Ill. Dec. 6, 1995) (M.J. Keys) ("The general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness'); *see also Auto Meter Prods. v. Maxima Techs. & Sys., LLC,* No. 05 C 4587,  2006 U.S. Dist. LEXIS 81687 at *6 (N.D. Ill. Nov. 6, 2006) (M.J. Nolan); *U.S. v. Amerigroup Illinois, Inc,,* 230 F.R.D. 538, fn. 5 (N.D. Ill. 2005).  They were served served in enough time to allow answers within the final discovery cut off date.

## IV.     CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 37.2

Plaintiffs hereby certify that they complied with the requirements of Local Rule 37.2. Plaintiffs' counsel, Lee Squitieri, and defendants' counsel have conferred by telephone on many occasions, the first of which occurred on April 18, 2008, and the last on May 1, 2008.  Plaintiffs' counsel offered a compromise in the letter dated April 23, 2008.   Squitieri Decl., Exhibit F. Defendants declined and proposed a schedule with a lengthier extension than requested by Plaintiffs. Squitieri Decl., Exhibit G.  The Parties could not reach agreement on any issues.  The parties' counsels are at an impasse.

## V.     CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this Motion for Modification of Pretrial Schedule be granted in its entirety and the Court enter the contemporaneously filed [Proposed] Order.

DATED:  May 6, 2008

**WEXLER TORISEVA WALLACE, LLP**

By: /s/  Edward A. Wallace
Kenneth A. Wexler
Edward A. Wallace
Mark R. Miller
55 West Monroe Street, Suite 3300
Chicago, Illinois  60603
(312) 346-2222 – Telephone

*Local Counsel*

Lee Squitieri
Maria J. Ciccia
Gregory Noce
**SQUITIERI & FEARON, LLP**
32 East 57th Street
12th Floor
New York, New York 10022
(212) 421-6492

Charles J. Piven
Marshall N. Perkins
**BROWER PIVEN**
A Professional Corporation
The World Trade Center-Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland 21202
(410) 332-0030

*Co-lead Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

|  |  |
|---|---|
| MAURICE LEVIE, individually and on behalf of all others similarly situated, | Civil Action No.: 04-CV-7643 |
| Plaintiff, | Judge Robert W. Gettleman<br>Magistrate Judge Arlander Keys |
| -against- | |
| SEARS ROEBUCK & CO., ALAN J. LACY, ESL PARTNERS, L.P. and EDWARD S. LAMPERT, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I, Mark R. Miller, hereby certify that a copy of the foregoing ***Plaintiffs Motion for Modification of Pretrial Schedule*** was electronically filed.  Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Date:  May 6, 2008

/s/ Mark R. Miller
Mark R. Miller
Wexler Toriseva Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
mrm@wtwlaw.com